IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:16-CR-038-D |
| | § | |
| DANIEL GASTELUM RAMOS | § | |

## MOTION TO SUPPRESS WITH BRIEF IN SUPPORT

Defendant Daniel Gastelum Ramos asks this Court to suppress evidence obtained pursuant to an unreasonable seizure on April 12, 2016. In support of this Motion, Mr. Ramos shows the court as follows:

### I. Background & Introduction

*The basic facts.* On the afternoon of April 12, 2016, Potter County Deputy Dustin Lansbury was working traffic on Interstate 40 near mile marker 62. (*See* Exhibit A at 7.) At approximately 13:11:33, the Deputy observed Mr. Daniel Gastelum Ramos make a lane change from the left passing lane to the right lane. (Exhibit A at 7.) Although this was a perfectly safe and legal lane change, the Deputy stopped Mr. Ramos for "cutting the vehicle off after passing." (Exhibit A at 7.)

*The Video.* Deputy Lansbury's dash camera video begins at 13:11:11, with him in the left passing lane at a GPS recorded speed of 115mph. The Deputy continued at a speed in excess of 110 mph for over twenty-four seconds, barreling down Interstate 40 in the left passing lane without his lights or siren on. At 13:11:33 Mr. Ramos, observing a car rapidly approaching from the rear, began to change lanes in order to avoid a collision. Before, during, and after the lane change by Mr. Ramos, there was no deviation from any vehicles on the interstate. The truck following Mr. Ramos does not even need to apply its brakes when Mr. Ramos enters the lane, this is visibly shown on the video by

the lack of brake lights. The Deputy pulls alongside of the truck and the video clearly shows more than two car lengths between the truck and Mr. Ramos.

*The offense report.* According to the offense report, the Deputy estimated the distance between Mr. Ramos' car and the truck behind it was within 1-2 car lengths immediately following the lane change. (Exhibit A at 7.) The Deputy caught up to Mr. Ramos and then estimated the distance was 2 car lengths and stated this created a safety hazard because the truck would not be able to stop safely if needed. (Exhibit A at 7.) The Deputy, after "several indicators of deception," grew suspicious, received consent to search the vehicle, and found contraband. (*See* Exhibit A at 7-9.) The video in comparison to the offense report readily permits this Court to test the reasonableness of the Deputy's conclusion that he had witnessed a violation of the Texas Transportation Code, namely §545.053. Upon Observation, this Court should conclude that the Deputy's interpretation of events was objectively unreasonable, thus rendering the stop unconstitutional.

## II. Argument & Authority

Deputy Lansbury justified his stop of Mr. Ramos by asserting that Mr. Ramos violated a traffic law. This Court should suppress all evidence gathered as a result of the stop because: (1) a violation of the law did not occur; and (2) it was not objectively reasonable for the Deputy to believe it did. *See United States v. Brigham*, 382 F.3rd 500, 506 (5th Cir. Tex. 2004) (explaining that a traffic stop is a Fourth Amendment "seizure" that must be justified by probable cause or reasonable suspicion); *see also Brinegar v. United States*, 338 S. Ct. 160, 176 (U.S. 1949) (holding an officer's mistake of fact can salvage an otherwise unlawful stop only if it is objectively reasonable).

The traffic law at issue in this case is Texas Transportation Code § 545.053(a), titled "Passing to the Left; Return; Being Passed," which states in full:

> An operator passing another vehicle: (1) shall pass to the left of the other vehicle at a safe distance; and (2) may not move back to the right side of the roadway until safely clear of the passed vehicle.

Tex. Trans. Code § 545.053(a). Apparent from the text of the statute, the policy behind § 545.053(a) is to prevent collisions between vehicles while passing others in a safe manner. The first requirement is that the operator of the passing vehicle shall maintain a "safe distance" from the vehicle being passed so that there is not a collision during the action of passing. The second requirement is that the passing vehicle may not come back into the original lane until it is "safely clear" of the passed vehicle. Here, taking into account the characteristics of the situation, there was simply no danger of a collision.

**A. Mr. Ramos did not violate any traffic law.**

The first, and most important question underlying whether Mr. Ramos was "safely clear" of the truck when he changed lanes was his actual distance from the truck. The Deputy first estimated the distance to be one to two car lengths and explained that Mr. Ramos had "barely" passed the truck, when he caught up he then described it as being approximately two. With the video, however, we can estimate the distance with more accuracy. In fact, with the aid of the video, a better estimate of the distance between Mr. Ramos and the truck is six car lengths. This estimate is based on the white highway lines between two vehicles, as the Deputy approaches both vehicles there is approximately three to four white lines between the two vehicles. The Federal Manual on Uniform Traffic Control Devices Section 3A.05 defines these white lines as ten feet long with thirty feet gaps in between them, boasting an estimate of one hundred and twenty feet to one hundred and sixty feet between the two vehicles. (Exhibit B.) A car length is estimated to be roughly twenty feet in length, which tells us that there were more than five car lengths between the two vehicles as shown on the video, contrary to the Deputy's description of one to two.

Analysis of the video reveals that Mr. Ramos did not "cut off" the truck, but made a safe and legal lane change over four car lengths ahead of the truck. This distance is consistent with the Texas driver's Handbook's suggestion to avoid cutting in too quickly if you must return to your original lane, and not to return to your lane until you have safely cleared the overtaken vehicle. (Exhibit C.) Mr. Ramos did not violate any traffic law, specifically § 545.053(a). Mr. Ramos did not "cut in after passing" the truck— he re-entered the right lane only after he safely cleared the truck he was passing by a distance of more than four car lengths.

**B. The Deputy's mistake of fact was not objectively reasonable.**

Although an officer's mistake of fact does not always render a seizure unreasonable, the Deputy's mistake in this case—his gross misestimate of the distance between Mr. Ramos and the truck he was passing—was not objectively reasonable. Therefore, the Deputy's seizure of Mr. Ramos was unlawful. *See Heien v. North Carolina*, 135 S. Ct. 530, 539 (U.S. 2014) ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable."); *see also Whren v. United States*, 517 U.S. 806 (U.S. 1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Viewing the video, it is impossible to believe that Mr. Ramos was not safely clear of the truck he was passing. It is surprising that someone with the training and expertise of a Sheriff's Deputy could make such a mistake. Yet the mistake was made. Because the mistake was not objectively reasonable, the seizure of Mr. Ramos and the subsequent search stand in violation of the Fourth Amendment.

### III. Prayer

For these reasons, Mr. Ramos respectfully prays that this Court hold an evidentiary hearing to determine the admissibility of the evidence complained of and, at the conclusion of the hearing,

exclude from admission as evidence at trial of this cause, the seized contraband, evidence, photographs and any statements by Mr. Ramos.

Respectfully submitted,

JASON A HAWKINS
Federal Public Defender
Northern District of Texas

   /S/ Carly Barton
CARLY BARTON
Assistant Federal Public Defender
Texas Bar No. 24086063
1205 Texas Avenue, Room 507
Lubbock, Texas  79401
Phone (806) 472-7236
E-mail carly_barton@fd.org
**Attorney for Daniel Gastelum Ramos**

## CERTIFICATE OF CONFERENCE

I Carly Barton, certify that I conferred with Assistant U.S. Attorney Sean Taylor. The government opposes the relief requested.

   /S/ Carly Barton
CARLY BARTON

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2016, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to Assistant U.S. Attorney Sean Taylor, the attorney of record in this case, who has consented in writing to accept this Notice as service of this document by electronic means.
   /S/ Carly Barton
CARLY BARTON